Traycee Ellen Klein (TK-2755)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-0077
Telephone: (212) 351-4500
Facsimile: (212) 661-0989

06 CV 1535

Attorneys for Plaintiff, ANNA PEARCE,
professionally known as Patty Duke

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x
ANNA PEARCE, professionally known as Patty Duke, :
        Plaintiff, :
    - against - :
MANHATTAN ENSEMBLE THEATER, INC., a :
New York domestic not-for-profit corporation, :
GOLDA TOUR I, L.P., a New York domestic limited :
partnership, DAVID FISHELSON, an individual, and :
FISHELSON PRODUCTIONS, INC., a New York :
domestic business corporation. :
        Defendants. :
------------------------------------------------ x

CASE NO.

<u>COMPLAINT</u>

<u>PLAINTIFF DEMANDS
A TRIAL BY JURY</u>

   Plaintiff ANNA PEARCE, professionally known as Patty Duke (hereinafter referred to as "Ms. Pearce" or "Plaintiff"), by and through her attorneys, Epstein, Becker & Green, P.C., for her Complaint against MANHATTAN ENSEMBLE THEATER, INC., GOLDA TOUR I, L.P. DAVID FISHELSON, and FISHELSON PRODUCTIONS, INC. (hereinafter collectively referred to as "Defendants"), alleges upon personal knowledge as to her own conduct and upon information and belief as to the conduct of others as follows:

## PARTIES

1. Ms. Pearce is, and at all material times relevant to this Complaint was, a citizen of the State of Idaho. Ms. Pearce is known professionally as "Patty Duke."

2. Defendant MANHATTAN ENSEMBLE THEATER, INC. is a domestic not-for-profit corporation organized and existing under the laws of New York, with its principal place of business in the State of New York.

3. Defendant GOLDA TOUR I, L.P. (hereinafter referred to as "Golda Tour") is a domestic limited partnership organized and existing under the laws of New York, with its principal place of business in the State of New York.

4. Defendant DAVID FISHELSON (hereinafter referred to as "Fishelson") is, and at all material times relevant to this Complaint was, a natural person residing within the State of New York, County of New York, and is a citizen of New York.

5. Defendant FISHELSON PRODUCTIONS, INC., is a domestic business corporation organized and existing under the laws of New York, with its principal place of business in the State of New York.

6. Except as hereinafter specifically described, Defendants, and each of them, were and are acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents, alter egos, and/or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

## JURISDICTION AND VENUE

7. As set forth further below, this Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this controversy is between citizens of different states.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and improper conduct that give rise to claims alleged occurred in this District and all of the Defendants reside in New York City.

## FACTUAL BACKGROUND

9. Ms. Pearce is a professional actress, known by the name Patty Duke, whose career has spanned more than 50 years. She is best known for her film role as Helen Keller opposite Anne Bancroft in *The Miracle Worker* and for her starring role in television's *The Patty Duke Show*. She is an Academy Award, Oscar, Emmy, and Golden Globe award winner.

10. The talent agency that represented Ms. Pearce during the time period relevant to this action is Mitchell K. Stubbs & Associates ("MKS"). Mitchell K. Stubbs is Ms. Pearce's agent. It is the policy and practice of MKS and Mr. Stubbs that no industry people seeking to engage Ms. Pearce's services are allowed to communicate directly with Ms. Pearce. All communications must be directed through MKS and direct contact is only allowed to be made with Ms. Pearce if and when the terms and the conditions of the engagement have been agreed upon by MKS and the persons and/or entities seeking to retain Ms. Pearce's services.

11. In or about October 2004, Defendants began contacting Mr. Stubbs regarding their desire to have Ms. Pearce play the role of Golda Meir, Israel's fourth Prime Minister (hereinafter referred to as the "role of Golda"), in the National Tour *Golda's Balcony*.

12. On October 15, 2004, Defendants forwarded the script for *Golda's Balcony* to Mr. Stubbs.

13. Some of the reasons that Defendants were so interested in having Ms. Pearce play the role of Golda were (i) they needed a "virtuoso actress," (ii) Tovah Feldshuh who performed the lead role on Broadway was not going to do the National Tour, and (iii) there was an extremely profitable marketing angle available to the Defendants in the marketing of their National Tour by engaging Ms. Pearce. *Golda's Balcony* was written by playwright William Gibson, who first worked with Ms. Pearce in 1959 in the Broadway production of *The Miracle Worker*. The association and collaboration of William Gibson and Ms. Pearce reuniting after 46 years provided Defendants with a highly profitable and desirable marketing position.

14. In fact, in communications with Mr. Stubbs Defendants professed that "Patty Duke is the star that we -- the producers—and the road theaters want . . . the connection of Patty and Bill Gibson (with 'The Miracle Worker') is considered a fun AND meaningful marketing angle by the road."

15. Subsequent to October 15, 2004, Defendants made numerous inquiries of Mr. Stubbs as to Ms. Pearce's interest in doing the tour. The National Tour was scheduled to begin in September or October 2005.

16. On October 26, 2004, Mr. Stubbs advised Defendants that Ms. Pearce loved the material (the Script) and was interested in moving forward.

17. In the beginning of November 2004, Ms. Pearce underwent heart bypass surgery.

18. At this time, Defendants were eager to continue their discussions with Mr. Stubbs to see if they could get a commitment concerning Ms. Pearce's engagement for the role of Golda.

19. Mr. Stubbs informed Defendants that he and Ms. Pearce would recommence discussions about acting jobs on December 1, 2004.

20. Throughout December 2004 Mr. Stubbs and Defendants continued negotiating the terms and conditions upon which Ms. Pearce would agree to perform in the National Tour.

21. Defendants were extremely anxious to reach an agreement with Mr. Stubbs and Ms. Pearce because of the fact that "theaters around the country" would not sign contracts for *Golda's Balcony* without "the star signed," i.e. the talent being "locked."

22. Defendants, by and through Mr. Fishelson, on December 8, 2004, acknowledged that Defendants needed to reach agreements with the theaters sooner rather than later and that they needed to know "within days" whether Ms. Pearce would commit to the National Tour.

23. In the days and weeks that followed the parties reached an agreement that Ms. Pearce would perform the role of Golda in the National Tour. The terms and conditions of the engagement were (a) Ms. Pearce would perform in the role of Golda in the *Golda's Balcony* National Tour, which was expected to run from approximately September/October, 2005, through approximately May 31, 2006; (b) Ms. Pearce would perform in eight performances over the course of six days for each week of public performances; (c) Ms. Pearce would refrain from


accepting any engagement in the entertainment field or otherwise that would interfere with performance under the contract; (d) Defendants would pay Ms. Pearce $25,000 for each week of public performances (pro-rated for weeks in which there were fewer than five public performances); (e) Ms. Pearce would be paid for each week of rehearsals at the minimum rate payable to actors under the then-current minimum requirements of the Actors' Equity Association; (f) Ms. Pearce would receive ten percent (10%) of all weekly ticket sales over $150,000, and fifteen percent (15%) of all weekly ticket sales over $175,000; (g) that Ms. Pearce was guaranteed no fewer than fifteen (15) weeks of full salary (even if the show closed); and (h) that Defendants would bear the costs, including reasonable attorneys' fees, of any losses suffered by Ms. Pearce resulting from a breach of any of Defendants' obligations.

24.  Immediately prior to reaching the above agreement, Mr. Fishelson, the producer of *Golda's Balcony*, wrote to Mr. Stubbs "Look forward to closing the deal, and finally speaking to Anna [Ms. Pearce]!"

25.  Mr. Stubbs and Defendants reached mutual agreement on all of the terms and conditions of Ms. Pearce's engagement, as set forth above, and Defendants were given Ms. Pearce's direct contact information. On January 5, 2005, Mr. Fishelson got his wish and spoke with Ms. Pearce. Thereafter, on January 20, 2005, Mr. Fishelson, on behalf of himself and all of the Defendants, met with Ms. Pearce in New York. On this same day Mr. Fishelson sent a personal email to Ms. Pearce and acknowledged "I just have to reiterate: the road is very excited about your casting . . . People in NYC are very excited about your casting . . .".

26.  In the days that followed, Defendants prepared press releases and advertising materials, stating, among other things, "PATTY DUKE to star in *Golda's Balcony*,"

"Academy Award Winner - Emmy Award Winner – Patty Duke Golda's Balcony – A new play by William Gibson".

27. Defendants represented to the press and to the theaters that Patty Duke and William Gibson would reunite when Ms. Duke [Ms. Pearce] starred in the National Tour.

28. Upon information and belief, as a result of the representations made by Defendants about Ms. Pearce, Defendants were able to get commitments from various theaters across the United States to book *Golda's Balcony*, as well as sell tickets.

29. In reasonable reliance on the agreement and promises made by Defendants, Ms. Pearce spent a substantial amount of time learning her lines and otherwise preparing for her role in *Golda's Balcony*. Additionally, since Defendants agreement with Ms. Pearce prohibited Ms. Pearce from accepting any engagement in the entertainment field or otherwise that would interfere with her performance of Golda, Ms. Pearce forewent other career opportunities, including, but not necessarily limited to, opportunities for movies, theater, and television.

30. When Ms. Pearce met with Mr. Fishelson on January 20, 2005, she shared with him the fact during the month of January she had been unable to complete the filming of a television program and that she felt that she had returned to work earlier than she should have after her heart surgery.

31. After getting publicity, advertising, and commitments from theaters, as well as other possible gain, by using Ms. Pearce's name, on March 7, 2005, Defendants directed their attorney John Breglio of the law firm of Paul, Weiss, Rifkin, Wharton & Garrison LLP to contact Mr. Stubbs and tell him that Defendants wanted to "divest" themselves of Ms. Pearce.

32. A motivating factor in Defendants' decision to terminate Ms. Pearce's contract and cast someone else in the role of Golda is that they, mistakenly, perceived her to be disabled and unable to perform under the agreement. This reason is unlawful and constitutes bad faith on Defendants' part.

33. Ms. Pearce further alleges on information and belief that Defendants continued to advertise *Golda's Balcony*, using Ms. Pearce's name and image long after they decided, but had not yet communicated to Ms. Pearce, that they intended to renege on their promises and cast a different actress, Valerie Harper.

34. At all pertinent times Ms. Pearce was ready and able to perform in the role of Golda and to meet all of her obligations under the parties' agreement.

35. On information and belief, Ms. Pearce alleges that Defendants intentionally capitalized on her notoriety, by using her professional name and picture, in order to sell *Golda's Balcony* to venues after Defendants had decided that she would not fill that role.

36. Defendants never obtained Ms. Pearce's written consent to use her name and image, and Ms. Pearce certainly did not consent, and would not have consented, to the use of her name and image in Defendants' advertising when they did not intend for her to perform the role of Golda.

37. Defendants have damaged Ms. Pearce's career, caused her emotional distress and financial loss, and unlawfully profited from her celebrity.

## COUNT 1

### BREACH OF CONTRACT
(Against All Defendants)

38. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. The parties entered into a contract (the agreement) as alleged in Paragraphs 10-24 above whereby Ms. Pearce was to perform in the role of Golda.

40. Defendants breached the contract by, among other acts, not using Ms. Pearce in the role of Golda.

41. As a result of Defendants' breach of contract, Ms. Pearce has suffered damages in an amount not yet ascertained, but which is in excess of the jurisdictional minimum of this court. The amount of damages will include, at a minimum, all amounts that Ms. Pearce should have been paid under the contract, including approximately $975,000 for performances ($25,000/week for approximately 39 weeks), plus ticket sale overages in amounts to be determined, plus payment for rehearsal time in amounts to be determined, plus attorneys' fees and costs in amounts to be determined, and more according to proof, plus prejudgment interest thereon.

## COUNT 2

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(Against All Defendants)

42. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43. Rather than comply with their contractual obligations, as alleged above, Defendants breached the contract's implied covenant of good faith and fair dealing by failing and refusing to honor their agreement that Ms. Pearce would play the role of Golda and by failing and refusing to compensate Ms. Pearce for the work that she did and according to their promises. Defendants' actions were undertaken with malice and wanton disregard of Ms. Pearce's rights.

44. Ms. Pearce is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action but presently believed to exceed $1.5

million. Ms. Pearce is also entitled to an award of punitive damages in an amount according to proof.

## COUNT 3

### PROMISSORY ESTOPPEL
(Against All Defendants)

Pleading in the alternative, and without waiver of any other of her claims, Plaintiff hereby alleges and avers as follows:

45. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46. Defendants made clear oral promises to Ms. Pearce that she would be performing the role of Golda and that she would be compensated in accordance with the terms of their agreement. Specifically, and without limitation, Defendants promised Ms. Pearce that she would perform in the role of Golda in eight performances over the course of six days for each week of public performances, that they would pay her $25,000 for each week of public performances (pro-rated for weeks in which there were fewer than five public performances), that they would pay her for each week of rehearsals at the minimum rate payable to actors under the then-current minimum requirements of the Actors' Equity Association, that she would receive ten percent (10%) of all weekly ticket sales over $150,000, and fifteen percent (15%) of all weekly ticket sales over $175,000.

47. Defendants knew at all times that Ms. Pearce was relying on Defendants' promises.

48. Plaintiff relied to her detriment on Defendants' promises, assurances and representations by, among other things, learning her lines and foregoing other career

opportunities, including, but not necessarily limited to, opportunities for movies, theater, and television.

49. The aforesaid reliance was to Plaintiff's detriment and was in all respects reasonable under the circumstances.

50. At all times relevant, Defendants were aware of Ms. Pearce's detrimental reliance and, indeed, intentionally encouraged Ms. Pearce to learn the lines for the role of Golda and forego other career opportunities all the while knowing that they had no intention of performing under the contract.

51. Ms. Pearce has been damaged as a result of Defendants' conduct by, among other things, losing out on other career opportunities, and performing work for no compensation, in an amount according to proof at trial.

52. Based on Defendants' representations and Ms. Pearce's reasonable reliance on those representations, Defendants are estopped from denying the terms of the agreement.

53. As a result, Ms. Pearce is entitled to receive compensation and redress for the damages she has sustained, according to proof at trial, but in any event, in excess of the jurisdictional minimum of this Court. The amount of damages will include, at a minimum, all amounts that Ms. Pearce should have been paid under the contract, including approximately $975,000 for performances ($25,000/week for approximately 39 weeks), plus ticket sale overages in amounts to be determined, plus payment for rehearsal time in amounts to be determined, plus attorneys' fees and costs in amounts to be determined, and more according to proof, plus prejudgment interest thereon.

## COUNT 4

## INVASION OF PRIVACY – MCKINNEY'S CIVIL RIGHTS LAW § 51
(Against All Defendants)

Pleading in the alternative, and without waiver of any other of her claims, Plaintiff hereby alleges and avers as follows:

54. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. Defendants' use of Ms. Pearce's name and image in the advertising, press releases, and other publicity as described above, which Ms. Pearce alleges on information and belief was done, at least in part, in the State of New York, was without Ms. Pearce's written consent in violation of McKinney's Executive Law § 51.

56. As a direct and proximate result of Defendants' use of her name and image without the requisite consent, Ms. Pearce has been damaged in an amount according to proof at trial.

57. Ms. Pearce further alleges on information and belief that Defendants' use of her name and image without the requisite consent was accomplished with the knowledge that it was unlawful and for the purpose of damaging her, or with reckless indifference to such damage, thus entitling Ms. Pearce to exemplary damages.

## COUNT 5

## UNJUST ENRICHMENT
(Against All Defendants)

58. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59. Defendants were unjustly enriched by their use of Ms. Pearce's name and image to advertise *Golda's Balcony* when they did not intend to honor their promises, and did

not honor their promises, to Ms. Pearce as alleged above. Defendants should be required to disgorge all profits they made through the improper use of Ms. Pearce's name and picture, which use was at Ms. Pearce's expense.

60. The circumstances are such that, in equity and good conscience, Ms. Pearce is entitled to the reasonable value of the services that she provided to Defendants and the reasonable value of the profit that they made by using her name and image in amounts according to proof at trial.

## COUNT 6

## EMPLOYMENT DISCRIMINATION – N.Y.C. CODE § 8-107(A) *ET SEQ.*
(Against All Defendants)

61. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62. Section 8-107(a) of the New York City Code makes it unlawful to discriminate in the terms and conditions of employment because of a perceived disability. Defendants have violated this law.

63. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination against her, Ms. Pearce has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Ms. Pearce is thereby entitled to general and compensatory damages in amounts to be proven at trial.

64. As a further direct and proximate result of Defendants' violation of Section 8-107(a), as heretofore described, Ms. Pearce has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with

Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Ms. Pearce will, therefore, seek leave of Court to amend this Complaint in that regard when the same shall become fully and finally ascertained. Ms. Pearce requests that attorneys' fees be awarded pursuant to N.Y.C. Code § 8-502(f).

65. Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants described above was done with malice toward Ms. Pearce and/or with reckless indifference to her rights. Defendants, through their officers, managing agents, and or its supervisors authorized, condoned and/or ratified the unlawful conduct alleged herein. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants pursuant to N.Y.C. Code § 8-502(a) in a sum or sums according to proof at trial.

<div align="center">

**COUNT 7**

**EMPLOYMENT DISCRIMINATION –
MCKINNEY'S EXECUTIVE LAW § 296 *ET SEQ.***
(Against All Defendants)

</div>

66. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67. Section 296 (Human Rights Law) of the State of New York makes it illegal to discriminate in the terms and conditions of employment on the basis of a perceived disability. Section 296 of the Human Rights Law also makes it illegal to aid, abet, incite, compel or coerce a violation of the law. Defendants have collectively violated this law.

68. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination against her, Ms. Pearce has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job

opportunities. Ms. Pearce is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff herby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Pearce prays for relief on the causes of action stated above against Defendants as follows:

1. For general and compensatory damages according to proof;

2. For punitive and exemplary damages in an amount sufficient to punish Defendants and deter them from wrongful conduct in the future;

3. For attorneys' fees incurred herein;

4. For costs of suit incurred herein;

5. For prejudgment interest at the statutory rate; and

6. For such other and further relief as this Court may deem proper.

DATED: February 24, 2006

EPSTEIN BECKER & GREEN, P.C.

By: _____
Traycee Ellen Klein (TK-2755)

Attorneys for Plaintiff, ANNA PEARCE, professionally known as Patty Duke